UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| DOUGLAS W. HAMILTON, | ) | CIV. 10-5009-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | GRANTING SUMMARY |
| | ) | JUDGMENT TO DEFENDANTS |
| BANGS, McCULLEN, BUTLER, | ) | |
| FOYE & SIMMONS, L.L.P., and | ) | |
| JEFFREY G. HURD, | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

Plaintiff Douglas W. Hamilton filed a complaint (Docket 1) against

defendants Jeffrey G. Hurd and the Bangs, McCullen, Butler, Foye &

Simmons, L.L.P., law firm ("Bangs McCullen" or "law firm").  The complaint

asserts claims of legal malpractice and breach of fiduciary duty arising out

of Attorney Hurd's representation of Mr. Hamilton and one of his

companies, Barker & Little, Inc., in litigation in Federal District Court for

the District of South Dakota captioned <u>Klein-Cadotte v. Barker & Little, Inc.,</u>

<u>and Douglas Hamilton</u>, CIV. 04-5084-RHB (hereinafter "Klein-Cadotte

litigation" or the "underlying litigation").[1]  <u>Id.</u>

_____

[1]Any docket reference to the underlying litigation will be preceded by that
civil filing number.

Defendants filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  (Docket 23).  The parties asked the court to consider matters outside the pleadings and, under Rule 12(d), the court entered an order converting defendants' motion to one for summary judgment pursuant to Fed. R. Civ. P. 56.  (Docket 30).  Following submissions on the summary judgment motion, the matter is ripe for resolution.  For the reasons below, the motion for summary judgment is granted.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, a movant is entitled to summary judgment if the movant can "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing a genuine issue of material fact exists.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Only disputes over facts that might affect the outcome of the case under the governing substantive law will preclude summary judgment.  Id. at 248.  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Id. (emphasis in original).

2

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate.  Id.  However, the moving party is entitled to judgment as a matter of law if the nonmoving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

## SUBSTANTIVE LAW

In this diversity action, the substantive law of the state of South Dakota applies.  Thach v. Tiger Corp., 609 F.3d 955, 957 (8th Cir. 2010).  See also Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

3

LEGAL MALPRACTICE

      To prevail on a legal malpractice claim, Mr. Hamilton must prove:

    1.   The existence of an attorney-client relationship giving rise to a duty;

    2.   That the attorney, either by an act or a failure to act, violated or breached that duty;

    3.   That the attorney's breach of duty proximately caused injury to the client; and

    4.   The client sustained an actual injury, loss or damage.

Keegan v. First Bank of Sioux Falls, 519 N.W.2d 607, 611 (S.D. 1994); see also Haberer v. Rice, 511 N.W.2d 279, 284 (S.D. 1994).  The third element, causation or proximate cause, requires:

> [I]n attorney malpractice, the causal requirement is worded in the negative. . . . plaintiff can recover against the defendant-attorney only when it can be shown that the injury would not have occurred "but for" the negligence of the lawyer.  Thus, the plaintiff must establish that the total or partial loss would not have occurred had it not been for some act or omission on the part of the attorney.  In other words, the plaintiff must show that "but for" the negligence of the lawyer, the client's cause of action or defense against a claim in the underlying action would have been successful.

Haberer, 511 N.W.2d at 284 (citation omitted).  In other words, "[i]n addition to proving negligence a client must show that but for his attorney's negligence [the client] would have been successful in the original litigation." Id. at 285.

BREACH OF FIDUCIARY DUTY

To prevail on a breach of fiduciary duty claim, Mr. Hamilton must

prove:

    (1)  That the defendant was acting as a fiduciary of the
          plaintiff;

    (2)  That [defendant] breached a fiduciary duty to the
          plaintiff;

    (3)  That the plaintiff incurred damages; and

    (4)  That the defendant's breach of fiduciary duty was a
          cause of the plaintiff's damages.

Grand State Property, Inc., v. Woods, Fuller, Shultz & Smith, P.C., 1996 SD

139, ¶ 16, 556 N.W.2d 84, 88.  "A breach of fiduciary duty in the

attorney-client relationship arises from the representation of a client and

involves the fundamental aspects of an attorney-client relationship.  The

fiduciary obligations are twofold: (1) confidentiality; and (2) undivided

loyalty."  Behrens v. Wedmore, 2005 SD 79, ¶ 52, 698 N.W.2d 555, 576

(internal quotation marks omitted).

**UNDISPUTED MATERIAL FACTS**

The following undisputed material facts are gathered from plaintiff's

responses (Docket 38) to defendants' statement of undisputed facts and

other undisputed and uncontroverted evidence where indicated.  The court

5

also takes judicial notice of the underlying litigation.[2]  See Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007); Stahl v. United States Department of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003).

THE UNDERLYING LITIGATION

Plaintiff Douglas Hamilton was the sole shareholder of Barker & Little, Inc., a real estate management company in Rapid City, South Dakota. (Docket 38, ¶ 1).  He was also its president and chief executive officer.  Id. Mr. Hamilton had interests in other closely held real estate entities.  Id. at ¶ 2.

In October 2003, Celisity Klein-Cadotte, an employee of Barker & Little, filed charges of discrimination against the company with both the South Dakota Division of Human Rights ("SDDHR")[3] and the United States Equal Opportunity Commission ("EEOC").[4]  Id. at ¶ 3.  On September 8, 2004, Ms. Klein-Cadotte filed a complaint against Barker & Little and Mr. Hamilton in United States District Court for the District of South Dakota. Id. at ¶ 6.  In that litigation, Ms. Klein-Cadotte was represented by attorneys

_____

[2]Plaintiff requested the court take judicial notice of the pleadings in the Klein-Cadotte litigation.  (Docket 27).

[3]On March 25, 2004, the SDDHR issued a determination of probable cause.  (Docket 38 at ¶ 4).

[4]The EEOC issued a notice of right to sue on July 13, 2005.  Id. at ¶ 5.

Veronica L. Duffy and Patrick K. Duffy.  Id. at ¶ 7.  Attorney Courtney R.
Clayborne filed an answer for both defendants.  Id. at ¶ 8.

On April 7, 2005, Attorney Clayborne represented Mr. Hamilton while
his deposition was taken.  Id. at ¶ 10.  Subsequent to Mr. Hamilton's
deposition, Ms. Klein-Cadotte's attorneys moved to have Attorney Clayborne
removed as counsel for the defendants.  Id. at ¶ 11.  The motion claimed Mr.
Clayborne was an employee of Barker & Little and would be a witness at
trial.  Id. at ¶ 12.  On August 1, 2005, District Judge Richard H. Battey
granted the motion to remove Mr. Clayborne as counsel.  Id. at ¶ 13; see
also CIV. 04-5084, Docket 20.  On September 30, 2005, Attorney Jeffrey G.
Hurd and the Bangs McCullen law firm entered a notice of appearance on
behalf Mr. Hamilton and Barker & Little in the Klein-Cadotte litigation.
(Docket 38, ¶ 14).

Ms. Klein-Cadotte filed a Chapter 7 bankruptcy petition on October
12, 2005.  (Docket 27-2, p. 5 ¶ 24).  Ms. Klein-Cadotte listed a "sexual
harassment claim against Barker and Little" with a current value of $35,000
in her bankruptcy petition.  Id. at p. 6 ¶ 32.  The bankruptcy court entered
an order on January 10, 2006, appointing Ms. Klein-Cadotte's attorneys as
special counsel for the bankruptcy trustee to complete the Klein-Cadotte

litigation.[5]  (Docket 37-5, p. 2).  On January 3, 2006, in the Klein-Cadotte litigation, retired United States Magistrate Judge Marshall Young issued a notice of settlement conference and settlement conference order.  (CIV. 04-5084, Docket 26).  The settlement conference was scheduled for February 1, 2006.  Id.

In his confidential settlement conference statement submitted to the magistrate judge, Mr. Hurd estimated the value of Ms. Klein-Cadotte's claim at $85,000.  (Docket 37-4, pp. 8 at No. 37 and 88 at No. 5).  On January 27, 2006, Mr. Hamilton called off the mediation and instructed Mr. Hurd to find out Ms. Klein-Cadotte's attorney's fees for preparing for the settlement conference.  (Docket 46-2, p. 5).  On January 30, 2006, Mr. Hamilton confirmed that he intended to cancel the mediation.  (Docket 46-2, p. 7). The next day, Mr. Hurd advised the magistrate judge the "Defendants have concluded that the reasonable likelihood of successfully resolving the case does not warrant the expenses that would be incurred by the parties." (Docket 46-2, p. 8).  Mr. Hurd further advised the magistrate judge the defendants, Barker & Little and Mr. Hamilton, would pay any mediation

---

[5]See Celisity Marjorie Cadotte fka Celisity Majorie Klein and Carl Jule Cadotte, Case No. 05-50750-INH, United States Bankruptcy Court, District of South Dakota, Dockets 12 and 13.

expenses, as well as Ms. Klein-Cadotte's attorney's fees incurred in preparing for mediation.  Id.

On February 17, 2006, Ms. Klein-Cadotte offered to settle her claim for $129,600.  (Docket 46-2, pp. 1-3).  That offer was conveyed to Mr. Hamilton by e-mail and regular mail.  Id.; see also Docket 27-2, p. 16 ¶ 74.  Mr. Hurd spoke with Mr. Hamilton who rejected Ms. Klein-Cadotte's offer of settlement and the "entire notion of settlement."  (Docket 46-2, p. 4).

A jury trial was held in March 2006.  (Docket 38, ¶ 15).  During trial, the parties stipulated the net worth of Barker & Little was a negative $6,750.  Id. at ¶ 16; see also CIV. 04-5084, Docket 75.  The stipulation also stated Mr. Hamilton had a net worth of $21,570,930.  (CIV. 04-5084, Docket 75).

The court's final instructions presented the following claims against both defendants for the jury's consideration:

Count I:     Sexual harassment under Title VII of the United States Code;

Count II:    Retaliation under Title VII of the United States Code;

Count III:   Sexual harassment under South Dakota Codified Laws chapter 20-13;

Count IV:    Retaliation under South Dakota Codified Laws chapter 20-13; and

Count V:     Intentional infliction of emotional distress under South Dakota law.

(CIV. 04-5084, Docket 76-2, p. 3).  The court also instructed the jury on punitive damages.  Id. at pp. 28-29.  The verdict returned by the jury was as follows:

> Counts I & III:  Verdict in favor of Ms. Klein-Cadotte and against defendant Barker & Little
>
> Compensatory damages:    $  200,000
> Punitive damages:          $2,500,000
>
> Counts II & IV:  Verdict in favor of Ms. Klein-Cadotte and against defendant Barker & Little
>
> Compensatory damages:    $  213,000
> Punitive damages:          $1,250,000
>
> Count 5:  Verdict for defendants Mr. Hamilton and Barker & Little.

(CIV. 04-5084, Docket 86-20; see also Docket 38 ¶ 17).

On March 27, 2006, Ms. Klein-Cadotte filed a motion to pierce the corporate veil or, in the alternative, to allow discovery on that subject.  (CIV. 04-5084, Docket 87).  Judge Battey entered a judgment consistent with the jury's verdict on March 29, 2006.  (CIV. 04-5084, Docket 91).

On March 29, 2006, Ms. Klein-Cadotte filed a motion to allocate damages awarded in the verdict.  (Docket 38, ¶ 19).  Her attorneys acknowledged the verdict must be reduced by $2,450,000, leaving a verdict against Barker & Little of $1,713,000.[6]  Id. at ¶ 20.

---

[6]Compensatory and punitive damages for a sexual harassment claim brought under Title VII against an employer with twenty employees are capped at $50,000.  42 U.S.C. § 1981a.  Under South Dakota law, no punitive damages are allowed on a sexual harassment claim.  See SDCL § 20-13-35.1.

10

On April 10, 2006, Bangs McCullen filed a motion for new trial on Counts I-IV on behalf of defendant Barker & Little.  (CIV. 04-5084, Docket 105).  On June 13, 2006, Judge Battey entered an order granting the motion for new trial.  Id. at Docket 124.  The most significant reason for granting a new trial was the court's conclusion it made an improper ruling on an attorney-client privilege issue which was prejudicial to the defendants.  Id. at pp. 15 and 18.  Prior to a new trial, the parties successfully negotiated a settlement which was paid by Barker & Little's insurance company.  (Docket 38, ¶ 22).

THE PRESENT LITIGATION

Mr. Hamilton's complaint alleges legal malpractice and breach of fiduciary duty.  (Docket 1).  As of May 31, 2007, Mr. Hamilton owned more than fifty commercial properties and undeveloped land with an approximate market value of $175 million.  (Docket 37-1, ¶ 4).  Prior to trial, outstanding loans to Mr. Hamilton and the business entities he controlled exceeded $30 million.  Id. at ¶ 11.  At the time Mr. Hamilton retained Bangs McCullen in September of 2005, he had a personal net worth in excess of $21 million. Id. at ¶¶ 5 and 6.  Mr. Hamilton is a sophisticated business man who was actively engaged in the world of finance and commercial real estate development prior to the Klein-Cadotte litigation.  (Docket 37-2, pp. 7-15 and 19-20).

11

Claims of legal negligence which allegedly occurred during the underlying litigation and asserted to support Mr. Hamilton's present complaint are summarized as follows:

1. The law firm assigned the defense to Mr. Hurd, even though he had relatively little trial experience and virtually none in the practice area of sexual harassment. (Docket 1 at ¶ 11).

2. No senior attorneys of the law firm supervised Mr. Hurd. Id.

3. Mr. Hurd committed a series of mistakes, errors or omissions which required the case to be tried.  Id. at ¶ 12.

4. When the case was tried, it was lost and resulted in an adverse damage award which should have been avoided. Id.

Even though the trial court granted a new trial, Mr. Hamilton alleges he suffered damages, summarized as follows:

1. The character assassination by plaintiff's counsel in the underlying litigation damaged his reputation.  Id. at ¶ 13.

2. The adverse verdict against Barker & Little damaged his reputation.  Id.

3. The verdict against Barker & Little and the adverse publicity had a "devastating effect" on his ability to obtain financing for his companies.  Id.

12

4.  As the result of defendants' conduct, Mr. Hamilton lost
    his net worth of $21,570,930 and is unemployed.  Id.[7]

Mr. Hamilton's statement of additional material facts are not statements of

fact but rather issues he believes yet need to be resolved.  (Docket 38, pp. 9-

10)

## ANALYSIS

LEGAL MALPRACTICE

There is no question that an attorney-client relationship existed

between Mr. Hamilton, Mr. Hurd and Bangs McCullen during the pendency

of the Klein-Cadotte litigation.  (Docket 27-2, p. 15 ¶¶ 67-68, p. 32, ¶¶ 67-

68).  To establish a breach of the duty of care owed by an attorney to his

client, the plaintiff must present evidence to prove the defendant attorney

did not "possess[] and use[] the knowledge, skill and care which the law

demands of him."  Lenius v. King, 294 N.W.2d 912, 914 (S.D. 1980); see

also Randall v. Bantz, Gosch, Cremer, Peterson and Sommers, 883 F. Supp.

449, 450 (D.S.D. 1995).

In a legal malpractice action, the opinions and testimony of expert

witnesses are indispensable in determining whether "a lawyer possessed

and used the knowledge, skill, and care which the law demands of him."

Lenius, 294 N.W.2d at 914.  "The opinions and testimony of such experts

---

[7]See also Docket 37-1 for Mr. Hamilton's declarations under oath as to
these allegations of damages.

are indispensable in determining questions which are unfamiliar to ordinary witnesses and, within that field, the opinions of lay witnesses are not admissible . . . ." Id. (internal citation omitted). The South Dakota Supreme Court explained the rationale for such a rule, as follows:

> [E]xcept in clear and palpable cases (such as the expiration of a statute of limitation), **expert testimony is necessary to establish the parameters of acceptable professional conduct, a significant deviation from which would constitute malpractice** . . . . The reason for this requirement is simply that a jury cannot rationally apply negligence principles to professional conduct absent evidence of what the competent lawyer would have done under similar circumstances, and the jury may not be permitted to speculate about what the 'professional custom' may be. **Expert evidence as to the 'professional custom' is required in malpractice actions against other professionals** . . . . **Consistence demands a similar standard for attorneys**.

Id. (emphasis added).

The requirement for expert testimony was recognized by our federal district court in Randall. "To sustain the burden of proof on the second element, breach of duty, **plaintiff must come forward with expert opinion testimony** to establish that the defendant attorneys did not possess and use the knowledge, skill, and care which the law demands of them. See Lenius v. King, 294 N.W.2d 912, 914 (S.D. 1980)." 883 F. Supp. at p. 450 (emphasis added).

The exception to the need for expert testimony in a legal malpractice action is limited to situations in which the attorney essentially did nothing whatsoever to represent his client's interests, resulting in such an obvious

14

and gross want of care and skill that the neglect would be clear to a layperson.  For example, a missed statute of limitations or a claim by an attorney that a filing was made when, in fact, no filing occurred.  See Lenius, 294 N.W.2d at 912.

Mr. Hamilton's allegations of attorney negligence do not fall in the narrow category of exceptions to the expert testimony rule.  While Mr. Hamilton disputes the impact, the facts are uncontroverted that he prevailed in the underlying litigation.  The jury returned a verdict in the Klein-Cadotte litigation in Mr. Hamilton's favor on all five counts.[8]  (CIV. 04-5084, Docket 86; see also Docket 38 ¶ 17).

The parties have not cited any South Dakota Supreme Court opinion or federal case applying South Dakota law wherein a former client was allowed to pursue a legal malpractice claim when the client received a favorable verdict in the case underlying the claimed legal malpractice.  Nor has the court independently been able to find such a case.

Legal malpractice in this setting, if it occurred at all, would not be obvious or evident to a layperson.  "[T]he issue [is] sufficiently complex so that the applicable standard of care must be established by expert

---

[8]The other defendant, Barker & Little, is not a party to this present litigation.  The jury's verdict in the underlying litigation and the resulting post-trial, pre-retrial settlement of Ms. Klein-Cadotte's claims against that defendant have little, if any, bearing on the issues presently before this court.

testimony." <u>Lenius</u>, 294 N.W.2d at 914.  Mr. Hamilton claims his "fact issues concerning defendants' acts/omission. . . . will also be [the] subject of expert testimony and proof."  (Docket 37, p. 21).

At the time of Mr. Hamilton's response to defendants' motion for summary judgment, Fed. R. Civ. P. 56(e)(2) provided:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).[9]  The only exception to this requirement was provided by Rule 56(f), which allows a party to "show[] by affidavit that, for specifi[c] reasons, it cannot present facts essential to justify its opposition . . . ."  Fed. R. Civ. P. 56(f).

"Under Rule 56(f), a party opposing summary judgment may 'seek a continuance and postpone a summary judgment decision,' but 'the party opposing summary judgment is required to file an affidavit with the district court showing what specific facts further discovery might uncover.'" <u>Anuforo v. C. I. R.</u>, No. 09-2375, 2010 WL 3023663 at *6 (8th Cir. Aug. 4, 2010) (quoting <u>Roark v. City of Hazen</u>, 189 F.3d 758, 762 (8th Cir. 1999)).

---

[9]Effective December 1, 2010, Rule 56 was reorganized.  However, for continuity, all references to the Rule will continue using the prior subsections and language in effect at the time of the filing of the motion for summary judgment and briefing.

Mr. Hamilton's attorney, Mr. Pepperman, includes a request for additional discovery under Rule 56(f) in plaintiff's opposition to defendants' motion for summary judgment.  (Docket 37-3, ¶¶ 31-34).  That request states  the following:

> Plaintiff intends to take the depositions of at least Jeffrey Hurd and Eric Pickar from the Bangs firm.  Plaintiff also plans to depose representatives from at least the following banks/lenders: Great Western Bank, U.S. Bank, Barclays Bank, Bankwest and Pioneer Bank.  Plaintiff also plans to subpoena documents from banks it has not previously served.   Finally, the depositions of the bankruptcy Trustee, city officials and former Barker & Little employees may be required.

Id. at ¶ 31.  While this list of anticipated depositions and discovery of documents may be relevant to Mr. Hamilton's damage claim (assuming liability exists), plaintiff fails to identify "what specific facts further discovery might uncover."  Aunuforo, 2010 WL 3023663 at *6.  None of these depositions focus on the issue of the "parameters of acceptable professional conduct, a significant deviation from which would constitute malpractice . . . ."  Lenius, 294 N.W.2d at 914.  None of these proposed depositions could provide the expert testimony necessary to support Mr. Hamilton's claim of legal malpractice.  Id.  Nor is there any statement as to the specific facts which this discovery may produce which would be essential to plaintiff's opposition to defendants' motion for summary judgment.  Rule 56(f).  South Dakota does not require the submission of an expert report as a condition precedent to filing a complaint based on professional negligence.

17

However, if Mr. Hamilton had such an expert before embarking on this litigation or in opposition to defendants' motion for summary judgment, he should have presented that expert testimony under Rule 56(e)(2).  It does not satisfy the requirements of Rule 56(f) to suggest that if a continuance is granted, a party will go look for an expert to support his claim.

Mr. Hamilton has not complied with, nor satisfied the Rule's exception.  See Anderson, 477 U.S. at 242 (party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial."); see also  Larson v. Kempker, 414 F.3d 936, 939 (8th Cir. 2005) ("The nonmoving party must show the existence of facts on the record which create a genuine issue.").

"Unless a party files an affidavit under Federal Rule of Civil Procedure 56(f) showing what facts further discovery may uncover, 'a district court generally does not abuse its discretion in granting summary judgment on the basis of the record before it.' "  Ballard v. Heineman, 548 F.3d 1132, 1137 (8th Cir. 2008) (citing Nolan v. Thompson, 521 F.3d 983, 986 (8th Cir. 2008)).

A defendant moving for summary judgment in a legal malpractice case need not present expert testimony establishing a standard of care even though a plaintiff in that position would need to do so, because the case law establishing the plaintiff's duty to provide expert testimony cannot fairly be

18

characterized as applying to a defendant's motion under Rule 56.

Gans v. Mundy, 762 F.2d 338, 342 (3d Cir. 1985).  "[T]he party moving for summary judgment has the ultimate burden of showing the absence of a genuine issue as to any material fact.  But once the [defendants] averred facts and alleged that their conduct was not negligent, a burden of production shifted to the [plaintiff] to proffer evidence that would create a genuine issue of material fact as to the standard of care."  Id. at p. 343 (internal citation omitted); see also Celotex Corp., 477 U.S. at 323 (the moving party is entitled to judgment as a matter of law if the nonmoving party has failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.").

In the absence of expert evidence to support Mr. Hamilton's claim that the defendants violated their duty, that is, committed legal malpractice, the defendants are entitled to summary judgment as a matter of law.  Randall, 883 F. Supp. at 451.

This conclusion also is appropriate on the causation element in light of the following undisputed record regarding the conduct of the Klein-Cadotte litigation.

Mr. Hamilton alleges Mr. Hurd failed to settle the case before trial.  He asserts the case "could, and should, have been **settled confidentially** or otherwise disposed of well **before** trial."  (Docket 37, p. 11) (emphasis in

19

original).  However, the undisputed facts are Mr. Hamilton specifically rejected mediation or any discussion of settlement with Klein-Cadotte's attorneys, who were authorized by the bankruptcy court to advance the claim for the benefit of the bankruptcy estate.  (Dockets 27-2, p. 16 ¶ 74 and 46-2).  Mr. Hamilton cannot blame Mr. Hurd for that which Mr. Hamilton is personally responsible.

During the jury trial of the Klein-Cadotte litigation, Mr. Hamilton alleges Mr. Hurd was negligent in the following manner:

1. During opening and closing statements, Mr. Hurd did not object to Ms. Klein-Cadotte's attorney's characterizations of Mr. Hamilton as a "monster," "pornographer," "sociopath," "jerk" or other pejorative and inflammatory names or terms.  Id. at 13.

2. Mr. Hurd failed to prevent or block the reading to the jury of the Clayborne memorandum.[10]  Id. at 14.

3. Mr. Hurd agreed to the written stipulation regarding the net worth of Mr. Hamilton[11] and Barker & Little, without any limiting jury instruction and without objecting during Ms. Klein-Cadotte's counsel's use of the stipulation during closing argument.  Id. at 14.

---

[10]Mr. Clayborne's two-page memorandum was a stern admonition to Mr. Hamilton regarding another employee's sexual harassment complaint.  (CIV. 04-5084, Docket 48-2).

[11]Counsel asserts Mr. Hamilton's "net worth is entirely **irrelevant**." (Docket 37, p. 14) (emphasis in original).  Yet, the issue of punitive damages went to the Klein-Cadotte litigation jury on the claims against Mr. Hamilton personally and individually.  (CIV. 04-5084, Docket 76-2, pp. 3 and 28-29).

Mr. Hamilton alleges that "[a]s a direct result of Hurd's incompetence, and by allowing the case to proceed through trial, the jury entered a verdict against B & L . . . on the conduct of its sole owner and President, Hamilton . . . ." (Docket 37, p. 14).

Specifically, Mr. Hamilton asserts that Attorney Hurd "failed to prevent the reading to the jury . . . and the introduction into evidence, of a highly incriminating, prejudicial and **privileged** memorandum drafted by Hamilton's counsel [Mr. Clayborne] . . . ." (Docket 25, p. 7) (emphasis in original).  Judge Battey's Order (Docket 27-3) provides the judicial determination of what occurred during trial.

1. "On March 7, 2006, defendants filed a motion *in limine* . . . concerning attorney Clayborne's memorandum . . . ." Id. at p. 10. "Within eleven days of plaintiff's submissions [which included attorney Clayborne's memorandum], but two weeks prior to trial, defendants filed a motion *in limine* disputing the memorandum's admissibility under the attorney-client privilege." Id. at p. 14.

2. During the pre-trial conference, "in another effort to exclude Clayborne's memorandum, defense counsel objected to the document's use pursuant to the attorney-client privilege and stated that the document was either stolen or inadvertently disclosed.  (Pre-Trial Tr. at 25)." Id. at 15.  "The Court addressed defendants' motion *in limine* at the pre-trial conference . . . . [and] denied the motion finding that any attorney-client privilege was waived, but stated that the motion was subject to being revisited." Id. at 10.

3. The trial court then examined the trial transcript at pages 93-94 and observed that defense counsel's "objection was lodged within a moment's time of plaintiff's counsel's question . . . . defendants' timely and specific objection preserved the challenge to the admission of the attorney-client memorandum." Id. at p. 11.

21

4.  "In addition, the advise [sic] contained in the document was not
    utilized during trial in forming a defense to plaintiff's claims.
    . . . Hamilton, therefore, did not waive the privilege." <u>Id.</u> at p. 12
    (internal citation omitted).

5.  Judge Battey concluded "it appears as though defense
    counsel made every reasonable effort to preclude the use
    of the attorney-client communique . . . ." <u>Id.</u> at p. 15.

Recognizing its own error in allowing the use of the attorney-client

memorandum during trial and the "highly prejudicial" impact the document

had on defendants' case, Judge Battey determined Barker & Little was

entitled to a new trial. <u>Id.</u> at pp. 15 and 18.

The trial court's denial of Mr. Hurd's motion *in limine* was sufficient to

preserve error. <u>See</u> Fed. R. Evid. 103(a) ("Once the court makes a definitive

ruling on the record admitting or excluding evidence, either at or before

trial, a party need not renew an objection or offer of proof to preserve a

claim of error for appeal."); <u>see also</u> <u>Shelton v. Kennedy Funding, Inc.</u>, 622

F.3d 943, 958-59 & n.14 (8th Cir. 2010). The court can envision no

scenario in which Mr. Hurd's handling of the attorney-client document

could result in a valid claim of legal malpractice. Mr. Hamilton has offered

no expert testimony to support such a claim.

Mr. Hamilton also alleges the adverse media and press coverage were

the "reasonably foreseeable" consequence of defendants' "series of

negligence acts and omissions before . . . and during trial . . . ." (Docket 37,

p. 9). "The judgment/verdict and surrounding publicity and fallout caused

22

the critical and primary banks and lenders to refuse to lend or renew loans/credit to Hamilton, thereby causing significant harm to his business and property interests." Id. at pp. 15-16.  Mr. Hamilton provides the court with no authority which creates attorney liability for bad press or damage to his reputation following a judgment which was favorable to Mr. Hamilton.[12]

In the Klein-Cadotte litigation, Mr. Hamilton did not suffer an adverse judgment.[13]  Rather, the professional judgment and trial strategy of Mr. Hurd must, in part, be given credit for securing a result favorable to Mr. Hamilton.  "It seems clear that while counsel has a duty to represent his client to the best of his ability, he does not become an insurer of either his client's self-esteem or his public reputation, liable for every misunderstanding of his client's position and responsible for every ambiguity in court proceedings susceptible to interpretation by outsiders."

---

[12]The cases advanced by Mr. Hamilton in support of his argument that he should be allowed to proceed with damages due to injury to reputation all specifically identified underlying legal malpractice based on adverse results occurring due to the negligence of the attorney.  Those cases are not helpful in the current analysis.

[13]His citation to Wissore v. Alvey, 562 N.E.2d 978 (Ill. App. 3d 1990) does not support the undisputed facts in this case.  In Wissore, the court found "a positive basis for concluding . . . a conflict [of interest] existed." Id. at 984.  That conflict created "a violation of defendants' duty of loyalty to plaintiff for which a malpractice action would be appropriate." Id.  It was through the conflict of interest that it was alleged plaintiff was subject to a contempt citation by the court and which prompted an alleged injury to plaintiff's reputation.  Id.

23

Zalta v. Billips, 81 Cal. App. 3d 183, 189, 144 Cal. Rptr. 888 (Cal. App. 1978).  "[U]ndoubtedly, the underlying cause of [Mr. Hamilton's] discontent was his original inclusion as a defendant in the . . . lawsuit, an inclusion whose undesirable consequences can in no way be attributed to counsel who successfully defended him."  Id. at p. 190.  Trial counsel cannot be held personally responsible for bad press coverage:

> In representing a defendant who has been sued for money damages counsel's professional and legal responsibility to his client is to negotiate and effect a [result] which releases his client from legal liability.  Counsel is not liable to his client if third persons not parties to the court proceedings misconstrue the significance of settlement, obtain inaccurate information from others . . . or attribute liability to a party where none has been assumed.  The duty to shape the content of outside reportage of events taking place in the courtroom is more properly that of press agent or public relations representative than of counsel or attorney at law.

Id.

Mr. Hurd, as a trial lawyer successful on the merits of a claim against his client, cannot be held legally responsible for consequences now complained of by Mr. Hamilton.  There is no causal connection between Mr. Hurd's successful defense of his client and the adverse press coverage Mr. Hamilton is alleged to have suffered.

"[A] disputed fact is not 'material' unless it would affect the outcome of the suit under the governing substantive law in that a 'reasonable jury could return a verdict for the nonmoving party.' " Parsons v. Dacy, 502

24

N.W.2d 108, 110 (S.D. 1993) (quoting <u>Anderson</u>, 477 U.S. at 248); <u>see also</u> <u>Celotex Corp.</u>, 477 U.S. at 322-23 (the rule "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

Mr. Hamilton has not shown there are genuine questions of material fact on either the issue of breach of professional duty or causation to support a claim of legal malpractice.  Defendants are entitled to summary judgment as a matter of law.

<u>BREACH OF FIDUCIARY DUTY</u>

"The relationship between attorney and client is highly fiduciary.  It consists of a very delicate, exacting and confidential character.  It requires the highest degree of fidelity and good faith.  It is a purely personal relationship, involving the highest personal trust and confidence." <u>Rosebud</u> <u>Sioux Tribe v. Strain</u>, 432 N.W.2d 259, 264 (S.D. 1988).  "A breach of fiduciary duty in the attorney-client relationship arises from the representation of a client and involves the fundamental aspects of an attorney-client relationship.  The fiduciary obligations are twofold:

(1) confidentiality; and (2) undivided loyalty." Behrens v. Wedmore, 2005 SD 79, ¶ 52, 698 N.W.2d 555, 576 (internal quotation marks omitted). In an attorney-client relationship,

> [t]he phrase "fiduciary breach". . . is no more descriptive than the phrase "legal malpractice[;]" [and a] cause of action for fiduciary breach requires a breach of confidence, a breach of loyalty, or both . . . . Therefore, [a]lthough the attorney functions in a fiduciary relationship, a wrong by an attorney does not thereby become a fiduciary breach. . . . [T]he courts have recognized that claims of negligence [breach of duty], which do not implicate a duty of confidentiality or loyalty, do not support a cause of action for fiduciary breach.

Id. (internal citation omitted). A breach of loyalty or confidentiality sufficient to constitute a breach of fiduciary duty was defined by the Behrens court.

> A breach of the duty of "undivided loyalty" has been found in two basic situations. The first is when an attorney obtains a personal advantage, whether consisting of an acquisition from the client, a joint venture with the client, or usurpation of an interest in, or opportunity concerning, the subject matter of the retention. Second, the duty of undivided loyalty is imperiled when there are circumstances that create adversity to the client's interest. These circumstances may consist of an existing, personal adverse interest of the attorney, an interest of a prior or subsequent client, or conflicting interests of present and multiple clients. A breach of confidentiality, outside of the context of adverse representation, has been rare and involves an unauthorized and unprivileged use or disclosure of a client's confidences. The terms of the engagement between the lawyer and client can bear on the scope of the fiduciary duties.

Id. at n. 15 (internal citation omitted). These types of actions are typically pursued "when an attorney embezzles, engages in conflicts of interest, or

violates obligations of loyalty . . . ."  Id.  The Behrens court suggests that unless there is "some showing of misuse of trust, conflict of interest, breach of loyalty, or other conduct involving honesty and fair dealing in the attorney-client relationship" there is no breach of fiduciary duty.  Id. at p. 577.

Mr. Hamilton alleges there was a conflict of interest between himself and his corporation, Barker & Little, during the Klein-Cadotte litigation. "Defendants never secured a written waiver of conflict of interest from either Hamilton or B & L."  (Docket 37, p. 30).  Mr. Hamilton identifies neither specific facts nor legal theories upon which a conflict of interest would be based, nor does he offer any expert testimony to support such a claim which, under the circumstances of this case, would be inherently tied to the legal malpractice claim.  Mr. Hamilton asserts that "[i]t is glaringly apparent from defendants' conduct/omissions that Hamilton was **not** provided with defendants' undivided loyalty and they did not exercise independent judgment."  Id. (emphasis in original).  Mr. Hamilton "failed to submit expert evidence reflecting an attorney's fiduciary duties . . . ."  Behrens, 2005 SD at ¶ 49, 698 N.W.2d at 573-74.

In the absence of expert evidence to support Mr. Hamilton's claim the defendants violated their fiduciary duty, the defendants are entitled to

27

summary judgment as a matter of law.  <u>Behrens</u>, 2005 SD at ¶ 49, 698 N.W.2d at 573-74; <u>Randall</u>, 883 F. Supp. at 451.

### ORDER

Based upon this analysis, it is hereby

ORDERED that defendants' motion for judgment on the pleadings (Docket 23), converted to a motion for summary judgment (Docket 30), is granted.

IT IS FURTHER ORDERED that plaintiff's complaint (Docket 1) is dismissed with prejudice.

Dated March 15, 2011.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE